UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE A. JUSINO, | : |
| Plaintiff, | : |
| | : |
| v. | :   Case No. 3:18cv2004(MPS) |
| | : |
| MONICA RINALDI, et al., | : |
| Defendants. | : |

## __INITIAL REVIEW ORDER__

The plaintiff, Jose A. Jusino, is incarcerated in the Walker Building at the MacDougall-Walker Correctional Institution ("Walker"). He has filed a complaint under 42 U.S.C. § 1983 against Commissioner Scott Semple ("Commissioner Semple"), Deputy Commissioner Monica Rinaldi ("Deputy Commissioner Rinaldi"), Director of Security Antonio Santiago ("Director Santiago"), Director of Psychology Services Thomas Kocienda ("Director Kocienda"), District Administrator Edward Maldenado ("District Administrator Maldenado"), District Administrator Angel Quiros ("District Administrator Quiros"), Warden Nick Rodriguez ("Warden Rodriguez"), Warden William Mulligan ("Warden Mulligan"), Warden Stephen Faucher ("Warden Faucher"), Deputy Warden of Programs and Treatment Derrick Molden ("Deputy Warden Molden"), Director of Offender Classification Dave Maiga ("Director Maiga"), Counselor Supervisor of Population Management Tugie ("Counselor Supervisor Tugie"), Deputy Warden Roach, Unit Manager for Security Risk Groups Stanley ("Unit Manager Stanley"), and Security Risk Group Manager Jon Aldi ("Security Risk Group Manager Aldi").

The plaintiff alleges that the defendants violated his Eighth and Fourteenth Amendment rights during his confinement in the security risk group program at Walker and Corrigan

Correctional Institution ("Corrigan") during the period from July 31, 2018 to October 17, 2018. For the reasons set forth below, the court will dismiss the complaint in part.

## I.    <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II.    <u>Facts</u>

The plaintiff states that he has been diagnosed as suffering from "multiple psychological

2

disabilit[ies] and traits as well as abnormal brain structure and function." *See* Compl., at 6 ¶ 26. He has been confined within the Connecticut Department of Correction since July 2005. *See id.* ¶ 25. In 2007, prison officials placed him on restrictive housing status. *See id.* ¶ 27. Prior to July 31, 2018, the plaintiff was confined at Northern Correctional Institution ("Northern") on special needs management status. *See id.* ¶ 28.

In June 2009, the plaintiff received a disciplinary report charging him with being a member of a security risk group called the Bloods. *See id.* ¶ 31. The plaintiff contends that he did not meet the requirements for designation as a security risk group member. *See id.* ¶ 32. "[F]or safety reasons, [the plaintiff] had to inform DOC that he wasn't a member of the Bloods, but was associated with the Latin Kings security risk group." *See id.* at 7 ¶ 33. After finding the plaintiff guilty of the disciplinary charge of security risk group affiliation, prison officials designated the plaintiff as a security risk group member. *See id.* at 5-6 ¶¶ 32, 34.

Prison officials have never reviewed the plaintiff's status as a security risk group member to determine whether he should remain a security risk group member. *See id.* at 6 ¶¶ 34-36. The plaintiff contends that he has not been engaged in security risk group activity since 2011 and has been disciplinary report free for a long time. *See id.* ¶ 36. In 2014, the plaintiff informed correctional staff that he was no longer associated with any gang. *See id.*

On July 31, 2018, prison officials at Northern transferred the plaintiff to Walker based on his designation as a security risk group member in 2009. *See id.* at 6 ¶ 30. The plaintiff contends that he was no longer a member of a security risk group at the time of his transfer and had exhibited no security risk group behavior or threatening behavior since 2011. *See id.* at 8 ¶¶ 38, 41.

The plaintiff remained at Walker in the security risk group program from July 31, 2018 to October 5, 2018. *See id.* at 13 ¶¶ 68-69. The conditions in the security risk group program were more restrictive than the conditions that the plaintiff had experienced during his confinement on special needs management status at Northern. *See id.* at 9-12 ¶¶ 43-59, 63. In addition to the restrictions on various privileges, the plaintiff claims that the ventilation system had not been cleaned and he was forced to breathe filthy air. *See id.* at 12 ¶ 62. The cleaning supplies available to the plaintiff were inadequate and there was no hot water in the sink in the plaintiff's cell. *See id.* at 12-13 ¶¶ 62, 67. There was no law library and he had no opportunity to exchange his dirty sheets and jumpsuit for clean sheets and a clean jumpsuit. *See id.* at 12 ¶¶ 61, 64. There was insufficient staffing to meet the mental health needs of inmates in the program and the mental health treatment offered to inmates was inadequate. *See id.* ¶ 65. There was no fire safety plan for the inmates in the plaintiff's housing unit. *See id.* ¶ 60. The plaintiff was required to eat his meals in his cell. *See id.* at 13 ¶ 66. The plaintiff refused to eat most of his meals because the different foods on his tray were often mixed with each other by the time the officer delivered the tray to him. *See id.*

On October 4, 2018, Security Risk Group Manager Aldi and Unit Manager Stanley informed the plaintiff that his confinement in the security risk group program from July 31, 2018 to October 4, 2018 would not count towards his "programming progression." *See id.* ¶ 68. On October 5, 2018, prison officials at Walker transferred the plaintiff to Corrigan. *See id.* ¶ 69.

At Corrigan, the plaintiff suffered a "mental health breakdown" and submitted a request to be transferred to another facility. *See id.* ¶ 70. On October 15, 2018, Security Risk Group Manager Aldi, Warden Faucher, Deputy Warden Molden, and Director Santiago met with the

plaintiff to discuss how to manage him. *See id.* ¶ 71. The plaintiff explained that he did not feel safe and was mentally unstable. *See id.* He requested to be transferred to a different facility. *See id.* Security Risk Group Manager Aldi, Warden Faucher, Deputy Warden Molden, and Director Santiago informed the plaintiff that he would be transferred back to Walker. *See id.* They also stated that prison officials would transfer the plaintiff back to Corrigan at a later date and warned the plaintiff that any refusal to be transferred back would result in disciplinary measures. *See id.*

The plaintiff remained in the administrative segregation unit at Corrigan for a total of twelve days. *See id.* at 14 ¶¶ 72-73. On October 17, 2018, prison officials at Corrigan transferred the plaintiff back to Walker. *See id.* at 14 ¶ 73.

The plaintiff's placement in the security risk group program at Walker exacerbated his mental health conditions. *See id.* In response to the deterioration of the plaintiff's mental health, prison officials raised the plaintiff's mental health needs score and placed the plaintiff on behavior observation status when he expressed thoughts of suicide. *See id.* Mental health providers have prescribed mood stabilizers and medication for the plaintiff's symptoms of depression and anxiety. *See id.*

## III. <u>Discussion</u>

The plaintiff alleges that Deputy Commissioner Rinaldi, Directors Santiago, Kocienda, and Maiga, District Administrators Maldenado and Quiros, Wardens Rodriguez and Mulligan, Deputy Warden Molden, and Counselor Supervisor Tugie failed to provide him with meaningful reviews of his special needs management status and his security risk group member status in violation of his Fourteenth Amendment due process rights. He claims that Commissioner

Semple, Security Risk Group Manager Aldi, Director Santiago, and Deputy Commissioner Rinaldi treated him differently than other similarly situated inmates who had been removed as Security Risk Group members in violation of his Fourteenth Amendment equal protection rights. He contends that Commissioner Semple, Deputy Commissioner Rinaldi, Directors Santiago, Kocienda, and Maiga, District Administrators Maldenado and Quiros, Wardens Rodriguez and Mulligan, Deputy Warden Molden, Counselor Supervisor Tugie, Deputy Warden Roach, and Unit Manager Stanley subjected him to deprivations of basic human needs and life's necessities during his confinement at Walker in violation of his Eighth Amendment rights. He claims that Warden Faucher kept him in the administrative segregation unit at Corrigan for twelve days without notice and/or a hearing and deprived him of his property and privileges in violation of his rights under the Eighth and Fourteenth Amendments.

A. **Official Capacity Claims**

In the opening paragraph of the complaint, the plaintiff states that he seeks both injunctive relief and damages. *See* Compl. at 1 ¶ 1. In his request for relief on the last page of the complaint, however, the plaintiff requests compensatory, nominal and punitive damages and "such relief as it may appear [he] is entitled to." *See* Compl. at 18 ¶ 87. Because the plaintiff does not articulate a request for injunctive relief, the court does not construe the complaint as including such a request.

To the extent that the plaintiff sues the defendants in their official capacities for monetary damages, that claim is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S.

332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). The claim for punitive, compensatory and nominal damages against the defendants in their official capacities is dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

**B.      Eighth Amendment**

The plaintiff alleges that Warden Faucher deprived him of privileges and his personal property items during his confinement in the segregation unit at Corrigan and that all of the other defendants subjected him to deprivations of basic human needs and life's necessities during his confinement in the security risk group program at Walker. He claims that the conditions at Walker and Corrigan caused him to suffer mental and emotional injuries and "future physical or death injur[ies]." Compl. at 16-17 ¶¶ 82, 84.

In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions that inflict "unnecessary and wanton pain" or that result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a basic life necessity or "a substantial risk of serious harm" to his health. *Farmer v Brennan*, 511

U.S. 825, 834 (1994).  The Supreme Court has identified the following basic human needs of an

inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions and

exercise.  *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of

Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.  In *Wilson*, the Supreme Court

observed that "[s]ome conditions of confinement may establish an Eighth Amendment violation

in combination when each would not do so alone, but only when they have a mutually enforcing

effect that produces the deprivation of a single, identifiable human need. . . ." 501 U.S. at 304

(emphasis, internal quotation marks, and citations omitted).

To meet the subjective element, the inmate must allege that the defendant prison officials

possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health

or safety and disregarded that risk by failing to take corrective action.  *See Farmer*, 511 U.S. at

834, 837.  The subjective element requires that the inmate allege that prison officials acted with

"a mental state equivalent to subjective recklessness, as the term is used in criminal law."

*Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer,* 511 U.S. at 839-40).

### 1. Conditions of Confinement - Corrigan

The plaintiff alleges that Warden Faucher confined him in the administrative segregation

unit at Corrigan from October 5, 2018 until October 17, 2018.  He contends that Warden Faucher

deprived him of privileges and his personal property items[1] during his confinement in

---

[1]  Although the plaintiff mentions a deprivation of property items, he does not allege that
those items of property were lost or stolen or that he did not receive those items back after his
release from the segregation unit at Corrigan.  Thus, the court does not construe this allegation as
a claim of a deprivation of the plaintiff's items of property in violation of the Due Process Clause
of the Fourteenth Amendment.  Even if the court were to construe the complaint to assert a
Fourteenth Amendment claim of permanent loss or destruction of property, "[a] prisoner may
challenge the deprivation of property in a § 1983 action only if the State provides no adequate

administrative segregation and that he suffered mental and emotional injuries as a result of his confinement.

These allegations do not state a claim of a violation of the plaintiff's Eighth Amendment rights. The plaintiff was confined at Corrigan for only twelve days. He does not describe any condition of his confinement in the segregation unit that might rise to the level of a deprivation of a basic human need or life necessity. *See Torrez v. Semple*, No. 3:17-CV-1232 (SRU), 2018 WL 2303018, at *5-6 (D. Conn. May 21, 2018) (temporary lack of access to personal property items and loss of privileges, including use of the mail and telephone, visitation with family members and trips to the commissary, did not constitute "deprivations of a basic human need" or a "life necessity"). The court concludes that the plaintiff has failed to assert facts to meet the objective prong of the Eighth Amendment standard. Accordingly, the allegation that Warden Faucher subjected the plaintiff to cruel and unusual punishment during his confinement in the segregation unit at Corrigan is dismissed. *See* 28 U.S.C. § 1915A(b)(1). Because the court has concluded that the plaintiff has not asserted a violation of his Eighth Amendment rights against Warden Faucher, the claim that the other defendants were involved in the violation by failing to correct it after being made aware of the alleged unconstitutional conditions is also dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 2. Conditions of Confinement - Walker

The plaintiff complains about various conditions of confinement that he experienced when he was confined at Walker in the security risk group program. *See* Compl. at 9-13 ¶¶ 43-

---

post-deprivation remedy." *Edwards v. Erfe*, 588 F. App'x. 79 (2d Cir. 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Connecticut provides inmates with a remedy for lost or destroyed property. *See* State of Connecticut Department of Correction Administrative Directive

67.  Those conditions included restrictions on the plaintiff's: interaction with other inmates, participation in communal dining, outdoor recreation, indoor recreation in the gym, group programming, use of his television, visitation with non-immediate family and out of state individuals, incoming and outgoing legal mail, retention of envelopes, and social telephone calls. *See id.* The conditions also involved limits on the amount of money that the plaintiff could spend at the commissary, the amount of personal property the plaintiff could retain in his cell, and the type of sneakers that the plaintiff could purchase and wear.  *See id.*  There was no fire safety plan, law library, or hot water in the sinks in the plaintiff's housing unit.  *See id.*  The ventilation system was dirty, the cleaning supplies were inadequate, and the mental health department was understaffed.  *See id.*  The plaintiff was not eligible for a job assignment and could not exchange his dirty sheets and jumpsuits for clean sheets and jumpsuits.  *See id.*  During outdoor recreation, the plaintiff had no access to water when it was very hot or outerwear when it was extremely cold or raining.  *See id.*

The plaintiff does not allege how each condition deprived him of a human need or life necessity or how each defendant was involved in the deprivation of that human need. Although the lack of clean bedding and clothing for weeks or months, unhealthy air quality for weeks and months, and repeated confinement in the recreation yard without water on excessively hot days or confinement in the recreation yard without warm clothing on excessively cold days might either singularly or in combination rise to the level of a deprivation or deprivations of basic human needs, such as warmth, sanitary living conditions, and health, the plaintiff does not include facts indicating how any defendant was involved in causing these conditions or failing to

9.6(16) (Aug. 15, 2013); Connecticut General Statutes § 4–141 *et seq.*

correct them. Instead, the plaintiff states that the defendants had a duty to protect him from the infliction of pain, and subjected him to deprivations of basic human needs or life's necessities, and that he suffered serious mental and emotional injuries as a result of the deprivations.[2]

As alleged, the facts do not state a claim that any defendant was aware of or responsible for the conditions at Walker or failed to take any action to correct the conditions. Thus, the plaintiff has not met the subjective prong of the Eighth Amendment conditions standard. Accordingly, the plaintiff has not stated a plausible claim under the Eighth Amendment that Commissioner Semple, Deputy Commissioner Rinaldi, Directors Santiago, Kocienda, and Maiga, District Administrators Maldenado and Quiros, Wardens Rodriguez and Mulligan, Deputy Warden Molden, Counselor Supervisor Tugie, Deputy Warden Roach, and Unit Manager Stanley were deliberately indifferent to his health and safety during his confinement in the security risk group program at Walker and that claim is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

**C.      Fourteenth Amendment Due Process – Confinement Segregation Unit**

The plaintiff alleges that during his twelve-day confinement at Corrigan, Warden Faucher housed him in the segregation unit. The plaintiff contends that Warden Faucher failed to provide

---

[2] The plaintiff does not include a separate Eighth Amendment claim for deliberate indifference to mental health needs. Nor has he named a psychologist, or psychiatrist or other mental health staff member who might have worked at Walker during his confinement in the security risk group program as a defendant. Director of Psychology Services for the Department of Correction Kocienda is named as a defendant because he is responsible for reviewing the classification status of an inmate and making a recommendation for the release of that inmate from the classification status. *See* Compl. at 3 ¶ 7. In addition, the plaintiff alleges that he received various forms of mental health treatment for the exacerbation of his mental health conditions caused by his confinement in the security risk group program at Walker. *See id.* at 14 ¶ 73. Thus, the court does not construe the complaint as asserting an Eighth Amendment deliberate indifference to mental health needs claim.

him with notice or any type of hearing prior to his placement in that unit.

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV. "Liberty interests protected by the Fourteenth Amendment may arise from two sources -- the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483-84. A plaintiff has a protected liberty interest only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields,* 280 F.3d 69, 80-81 (2d Cir. 2000).

In *Arce v. Walker*, 139 F.3d 329, 334-35 (2d Cir. 1998), the Second Circuit concluded that the *Sandin* analysis should be applied to determine whether placement in non-punitive administrative segregation implicates a liberty interest. In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court considered a due process claim asserted by inmates who had been classified for placement in a high security state prison for safety and security, rather than disciplinary reasons. In determining whether the inmates had a liberty interest in avoiding confinement in the very restrictive, maximum security prison for an indefinite period of time, the Court applied the standard set forth in *Sandin*. *See id.* at 223 ("After *Sandin*, it is clear that the

touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 at 484.). The Court concluded that the restrictive conditions at Ohio State Penitentiary "taken together [] impose[d] an atypical and significant hardship" on inmates and gave "rise to a liberty interest in their avoidance." *Id.* at 224.

The Second Circuit has held that "in determining whether [an inmate] endured an atypical and significant hardship" a district court should consider the duration of the inmate's confinement in segregation and "the extent to which the conditions [in] . . . segregation differ from other routine . . . conditions" in general population." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation marks and citation omitted). With regard to duration, the Second Circuit has resisted establishing a "bright line rule that a certain period of . . . confinement [in a restrictive housing unit] automatically fails to implicate due process rights." *Id.* Nonetheless, "[i]n the absence of a detailed factual record, [the Second Circuit has] affirmed dismissal of due process claims . . . where the period of time spent in [segregated housing] was exceedingly short – less than the 30 days that the *Sandin* plaintiff spent in [segregated housing] – and there was no indication that the plaintiff endured unusual . . . conditions." *Id.* at 65-66.

The plaintiff states that he was confined in the segregation unit at Corrigan from October 5, 2018 until October 17, 2018. During his confinement, he was "without his property or privileges." The plaintiff does not otherwise describe the conditions in the segregation unit. There are no allegations suggesting that the conditions under which the plaintiff was confined for twelve days in the administrative segregation at Corrigan subjected him to an atypical and

significant hardship.  Accordingly, the plaintiff has not alleged that he experienced conditions that were sufficiently atypical or significant as compared to the basic conditions of prison life to give rise to a liberty interest in their avoidance.   Absent a liberty interest, the plaintiff is not entitled to procedural due process protections.  The court concludes that the facts as alleged in the complaint, do not state a claim that Warden Faucher or any other defendant violated the plaintiff's procedural due process rights in connection with his placement in the administrative segregation unit at Corrigan for twelve days.  This Fourteenth Amendment due process claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### D.    Fourteenth Amendment Due Process – Periodic Reviews

The plaintiff alleges that he has been confined on restrictive housing status since 2007. At some point, he was housed on special needs management status at Northern.  In July 2009, prison officials designated him as a security risk group member because of his affiliation with the Latin Kings gang.  Although he had been designated as a security risk group member, he remained on special needs management status until July 31, 2018.  The plaintiff alleges that Deputy Commissioner Rinaldi, Directors Santiago, Kocienda, and Maiga, District Administrators Maldonado and Quiros, Wardens Rodriguez and Mulligan, Deputy Warden Molden, and Counselor Supervisor Tugie failed to engage in periodic reviews of his special management needs status and his security risk group status to determine whether his continued confinement under either status was warranted.  The plaintiff contends that as of July 31, 2018, when the defendants transferred him to Walker to participate in the security risk group program, he was no longer a member of the Latin Kings or the Bloods gang.

In *Hewitt*, the Supreme Court held that "prison officials must engage in some sort of periodic review of the confinement of [an] . . . inmate[s]" placed on administrative segregation or detention to ascertain "whether [the inmate] remains a security risk." 459 U.S. at 477 n. 9.  These reviews are necessary to ensure that prison officials are not using "administrative segregation . . . as a pretext for indefinite confinement of an inmate." *Id.*  The Second Circuit has observed that periodic reviews of an inmate's placement in administrative segregation are "flexible and may be based on 'a wide range of administrative considerations,' including but not limited to observations of the inmate in Ad[ministrative] Seg, 'general knowledge of prison conditions,' misconduct charges, ongoing tensions in the prison, and any ongoing investigations."  *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) (quoting *Hewitt*, 459 U.S. at 477 n.9).

The court concludes that the plaintiff has stated plausible Fourteenth Amendment procedural due process claims relating to his continued confinement on special management needs status and security risk group status without meaningful, periodic reviews.  These claims will proceed against Deputy Commissioner Rinaldi, Directors Santiago, Kocienda, and Maiga, District Administrators Maldenado and Quiros, Wardens Rodriguez and Mulligan, Deputy Warden Molden, and Counselor Supervisor Tugie in their individual capacities.

### E.    Fourteenth Amendment Equal Protection Claim

The plaintiff generally asserts that the defendants have removed other inmates from security risk group designations "in similar situation[s]" even though those inmates were "worst and less qualify than [him] and without [requiring them to] complet[e] . . . any program or programming."  Compl. at 8 ¶ 37.  In the description of his equal protection claim on pages fifteen and sixteen of the complaint, the plaintiff alleges that Commissioner Semple, Security

Risk Group Manager Aldi, Director Santiago and Deputy Commissioner Rinaldi failed to follow Department of Correction policies and did not treat him the same as other inmates in similar situations who "had their security risk group designation removed." *See id.* at 15 ¶ 78.

The Equal Protection Clause protects individuals from invidious discrimination. It does not mandate identical treatment for each individual or group of individuals. Instead, it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980). Alternatively, an equal protection claim can sometimes be sustained even if the plaintiff does not allege "class-based" discrimination, but instead claims that he has been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). To state a claim under the class of one theory, plaintiffs "must show 'an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

The plaintiff does not allege that he was part of a protected class that endured discrimination. Rather he contends that he was treated differently than other prisoners who were similarly situated to him. He does not sufficiently describe the other inmates who he claims

were subject to removal of a security risk group designation without having to complete programming or without meeting all the requirements for removal of the designation. Thus, the plaintiff has not asserted facts to show the necessary degree of similarity between himself and other inmates in order to state a class of one equal protection claim. *See Ruston*, 610 F.3d at 60 (since plaintiffs failed to allege facts showing that properties sufficiently similar to theirs were treated more favorably by defendants, plaintiffs failed to state a "class of one" equal protection claim); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (The plaintiff's circumstances and the other person's circumstances must be "*prima facie* identical.") (internal quotation marks and citation omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008); *Webb v. Arnone*, No. 3:17-CV-01624 (SRU), 2018 WL 3651333, at *5 (D. Conn. Aug. 1, 2018) (concluding inmate "ha[d] not met the requirements necessary to state a plausible class-of-one equal protection claim" because he had failed to assert any "facts to show that he was essentially identical to the other former death row inmates who are no longer subject to the out-of-cell restraint policy"). The Fourteenth Amendment equal protection claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

The court enters the following orders:

(1) The claim for monetary damages against the defendants in their official capacities is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The Eighth Amendment conditions claim and the Fourteenth Amendment due process claims related to the plaintiff's confinement at Corrigan from October 5, 2018 until October 17, 2018 against all defendants and the Fourteenth Amendment equal protection claim against Commissioner Semple, Security Risk Group

Manager Aldi, Director Santiago and Deputy Commissioner Rinaldi are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and the Eighth Amendment conditions of confinement claims related to the plaintiff's confinement at Walker beginning on July 31, 2018 against Commissioner Semple, Deputy Commissioner Rinaldi, Directors Santiago, Kocienda, and Maiga, District Administrators Maldenado and Quiros, Wardens Rodriguez and Mulligan, Deputy Warden Molden, Counselor Supervisor Tugie, Deputy Warden Roach, and Unit Manager Stanley are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  The Fourteenth Amendment due process claims relating to the plaintiff's continued confinement on special management needs status and security risk group status without meaningful, periodic reviews will proceed against Deputy Commissioner Rinaldi, Directors Santiago, Kocienda, and Maiga, District Administrators Maldenado and Quiros, Wardens Rodriguez and Mulligan, Deputy Warden Molden, and Counselor Supervisor Tugie in their individual capacities.

The court will permit the plaintiff twenty (20) days to file an amended complaint to assert facts in support of his Eighth Amendment conditions claim related to his confinement in the security risk group program at Walker beginning on July 31, 2018.  If the plaintiff chooses to file an amended complaint, he must include facts to show how each condition or combination of conditions that existed at Walker deprived him of a basic human need and also describe how each defendant was involved in, responsible for or aware of the various conditions at Walker that allegedly deprived him of a basic human need.  Because an amended complaint completely replaces the original complaint, the plaintiff should also include the allegations from the complaint in support of the Fourteenth Amendment claim regarding his continued confinement in special needs and the security risk group programs without undergoing meaningful reviews.

**(2)**     Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of: Deputy Commissioner Monica Rinaldi, Director of Security Antonio Santiago, Director of Psychology Services Thomas Kocienda, District Administrator Edward Maldenado, District Administrator Angel Quiros, Warden Nick Rodriguez, Warden William Mulligan, Deputy Warden of Programs and Treatment Derick Molden, Director of Offender Classification Dave Maiga, and Counselor Supervisor of Population Management Elizabeth Tugie, and mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)**     Defendants Rinaldi, Santiago, Kocienda, Maldenado, Quiros, Rodriguez, Mulligan, Molden, Maiga, and Tugie shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include all additional defenses permitted by the Federal Rules.

**(4)**     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the court.

**(5)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(6)** The Clerk shall send a copy of the complaint and this order to the plaintiff and to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

SO ORDERED at Hartford, Connecticut this _15_ day of ___April_____, 2019.

/s/ MICHAEL P. SHEA_____
Michael P. Shea
United States District Judge