UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE A. JUSINO,<br>　　Plaintiff, | :<br>:<br>: |
| v. | : Case No. 3:18cv2004(MPS) |
| MONICA RINALDI, et al.,<br>　　Defendants. | :<br>:<br>: |

## **RULING AND ORDER**

The plaintiff, Jose A. Jusino, is incarcerated at Northern Correctional Institution ("Northern"). On June 6, 2019, the plaintiff filed an amended complaint. For the reasons set forth below, the amended complaint will be dismissed in part.

**I.　　Procedural Background**

The plaintiff initiated this action by filing a complaint against fifteen employees of the Department of Correction. *See* Compl., ECF No. 1 at 1. He asserted Eighth Amendment conditions of confinement claims, a Fourteenth Amendment equal protection claim, and Fourteenth Amendment due process claims related to his confinement on special management needs status at Northern and his confinement on security risk group status in the Walker Building at MacDougall-Walker Correctional Institution ("Walker") and Corrigan Correctional Institution ("Corrigan"). *See id.* at 2.

On April 15, 2019, after reviewing the complaint under 28 U.S.C. § 1915A(b), the court dismissed the Fourteenth Amendment equal protection claim, the Eighth Amendment claim related to conditions at Corrigan, and the Fourteenth Amendment due process claim related to the plaintiff's confinement at Corrigan. The court dismissed without prejudice the Eighth

Amendment conditions claim related to the plaintiff's confinement at Walker. *See* Initial Review Order, ECF No. 8, at 17-18. The court concluded that Fourteenth Amendment due process claims relating to the plaintiff's long-term confinement on special management needs status and security risk group status without meaningful, periodic reviews would proceed against defendants Rinaldi, Santiago, Kocienda, Maiga, Maldenado, Quiros, Rodriguez, Mulligan, Molden, and Tugie in their individual capacities. *See id.* at 18. The court also permitted the plaintiff to file an amended complaint to re-assert his Eighth Amendment conditions claim related to his confinement in the security risk group program at Walker beginning on July 31, 2018. The court instructed the plaintiff that if he chose to file an amended complaint, "he must include facts to show how each condition or combination of conditions that existed at Walker deprived him of a basic human need and also describe how each defendant was involved in, responsible for or aware of the various conditions at Walker that allegedly deprived him of a basic human need." *Id.*

The amended complaint asserts claims under 42 U.S.C. § 1983 and re-names Commissioner Scott Semple, Deputy Commissioner Monica Rinaldi, Director of Security Antonio Santiago, Administrators Edward Maldenado, Angel Quiros, Nick Rodriguez, William Mulligan, and David Maiga, and Correctional Employees Elisabeth Tugie, Jon Aldi, Derrick Molden, and Thomas Kocienda as defendants and adds Commissioner Rollin Cook and Correctional Employees Daniel Papoosha, Craig Burns and Mark Frayne as defendants. *See* Am. Compl., ECF No. 27. The plaintiff alleges that the defendants violated his Fourteenth Amendment rights during his confinement on special needs management status at Northern beginning in 2010 and during his confinement on security risk group status from 2009 to the

present.

## II.     Standard of Review

The court reviews the amended complaint pursuant to 28 U.S.C. § 1915A(b). Under section 1915A(b), a court must "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## III.    Facts

The plaintiff states that he has been diagnosed as suffering from "multiple psychological disabilit[ies] and traits as well as abnormal brain structure and function." *See* Am. Compl., at 4 ¶

9. He has been confined in a restrictive housing unit since 2007. *See id.* ¶ 10.

In 2009, the plaintiff received a disciplinary report charging him with being a member of a security risk group called the Bloods. *See id.* at 5 ¶ 17. The plaintiff contends that he was never a member of the Bloods gang. *See id.* "[F]or safety reason[s], [the plaintiff] had to inform DOC that he [was] not a member of the Bloods, but was associated with the Latin Kings security risk group." *See id.* at 6 ¶ 18. After finding the plaintiff guilty of the disciplinary charge of security risk group affiliation, prison officials designated the plaintiff as a security risk group member. *See id.* at 5 ¶ 17.

The plaintiff has been classified as a security risk group member for a decade. *See id.* at 6 ¶ 20. Under Connecticut Department of Correction Directive 6.14(9), prison officials shall review an inmate's designation as a security risk group member at least every six months to determine whether an inmate should remain a security risk group member. *See id.* ¶ 19. Prison officials have never reviewed the plaintiff's status as a security risk group member. *See id.* ¶ 20. For years, prison officials continued to classify the plaintiff as a security risk group member because he had not completed the security risk group phase program but failed to offer him the opportunity to complete the program. *See id.*

In 2010, Department of Correction officials classified the plaintiff as special needs management status and confined him at Northern. *See id.* at 4 ¶ 11. During his confinement on special needs management status, prison officials permitted the plaintiff to: watch television in his cell, take a shower every day, participate in outdoor recreation for two hours each day, participate in recreation in the gym, visit with non-immediate family members, visit with his mother for an extended period of time, purchase $75.00 of commissary items and $150.00 of

4

holiday packages, keep all of his property in his cell, and engage in congregate programming and work assignments. *See id.* at 7 ¶ 21.

Department of Correction Administrative Directive 9.4(13)(E) requires that prison officials develop an individualized facility management plan for each inmate who has been placed on special needs management status. *See id.* at 4 ¶ 12. The plan should include recommendations to assist the inmate in achieving removal from special needs management status. *See id.* In addition, Administrative Directive 9.4(13)(F) requires that a hearing be held at least every six months to assess an inmate's classification to special needs management status and that a mental health professional review every ninety days the inmate's classification as special needs management status. *See id.* ¶ 13. Administrative Directive 9.2(15) requires that each inmate be involved in program decisions and be seen by classification staff. *See id.* at 5 ¶ 14.

On July 31, 2018, prison officials at Northern transferred the plaintiff to Walker to participate in the security risk group program based on his designation as a security risk group member in 2009. *See* Compl. at 6 ¶ 30. At the time of the plaintiff's placement in the security risk group program, he had not engaged in security risk group activity since 2011 and had not recently received a disciplinary report. *See id.* at 7 ¶ 36; Am. Compl. at 6 ¶ 20. There was no penological basis for the decision by Commissioners Semple and Rollins, Deputy Commissioner Rinaldi, Administrators Maldanado, Quiros, Mulligan, Maiga and Rodriguez and Correctional Employees Aldi, Molden, Tugie, and Kocienda to remove the plaintiff from special needs management status and to place him in the security risk group program. *See* Am. Compl. at 8 ¶ 25.

The conditions of confinement in the security risk group program are more restrictive and dangerous than the conditions experienced by the plaintiff during his confinement on special needs management status. *See id.* at 7 ¶ 21; at 8 ¶ 25. During his confinement in phase one of the security risk group program, prison officials required the plaintiff to: remain in his cell for twenty-three hours a day during the week and twenty-four hours a day on Saturdays and Sundays, recreate in handcuffs behind the back, wear handcuffs, leg shackles and a tether chain every time he left his cell, and eat all meals in his cell. *See id.* ¶ 22. Prison officials also restricted the plaintiff to three showers a week, three telephone calls a week, and $25.00 worth of commissary items. *See id.* The plaintiff was not permitted to participate in congregated programming, hold a job, receive holiday packages or keep a television in his cell. *See id.*

The defendants refused to count the time that the plaintiff spent on special needs management status towards the time that he must spend completing all of the phases of the security risk group program. *See id.* at 8 ¶ 23. The plaintiff suffered mental, emotional, and physical harm from his classification as both special needs management status and security risk group member status. *See id.* at 9 ¶ 27.

**IV.    Discussion**

The plaintiff re-asserts his claim regarding the lack of meaningful, periodic review of his special needs management status and his security risk group member status. He also contends that the defendants improperly removed him from special needs management status and transferred him to the security risk group program, and confiscated his property in violation of his Fifth and Fourteenth Amendment due process rights. *See id.* at 9 ¶ 26. The plaintiff seeks injunctive relief from the defendants in their official capacities and monetary damages from the

6

defendants in their individual capacities. *See id.* at 10.

Although the plaintiff describes the conditions that he experienced during his confinement on special needs management status and his confinement in the security risk group program, he does not assert facts to state a plausible claim that the conditions deprived him of a basic human need or otherwise violated the Eighth Amendment. Thus, it is apparent that the plaintiff has chosen not to pursue a claim under the Eighth Amendment.

### A. Fifth Amendment

The plaintiff alleges that the defendants violated his right to due process under both the Fifth and the Fourteenth Amendments in connection with his confinement on special needs management status and security risk group status. The Fifth Amendment, however, applies to the federal government, not to the states. *See Dusenbery v. United States,* 534 U.S. 161, 167 (2002) (holding Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials). The plaintiff has not raised any claim against a federal government actor. Thus, his Fifth Amendment due process claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B. Fourteenth Amendment Deprivation of Property

The plaintiff alleges that the defendants "confiscate[ed] property without a post-deprivation remedy." The plaintiff does not describe the items of property that were allegedly confiscated, when the items of property were confiscated, which defendant or defendants confiscated the property items or whether he made any attempt to use the remedies available to an inmate whose property has been lost or destroyed.

A claim for confiscation or loss of property is not cognizable in a section 1983 action. The Supreme Court has found that the Due Process Clause of the Fourteenth Amendment is not violated when a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers if the state provides an adequate post-deprivation compensatory remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981).

The State of Connecticut provides an adequate remedy for the kind of deprivation that the plaintiff alleges in Department of Correction Administrative Directives and under Connecticut statutes. Administrative Directive 9.6(16) & (F) provides that the Department of Correction's "Lost Property Board shall hear and determine any claim by an inmate in a correctional facility who seeks compensation not exceeding . . . ($3,500.00) for lost or damaged personal property" and that an inmate may pursue his property claim with the Connecticut Claims Commissioner if the Board denies the claim completely or in part. Conn. Gen. Stat. § 4-141 *et seq.* provides that claims for payment or refund of money by the state may be presented to the Connecticut Claims Commission. These state remedies are not inadequate simply because an inmate anticipates a more favorable remedy under the federal system or it may take a longer time under the state system before his case is resolved. *See Hudson*, 468 U.S. at 535.

The plaintiff does not indicate that he has pursued his available remedies through the Department of Correction's Lost Property Board or the Office of the Claims Commissioner. Instead, he simply states that items of his property were confiscated and that he has no post-deprivation remedy. This conclusory allegation does not demonstrate that the State of Connecticut's procedures for processing property claims are inadequate. *See Riddick v. Semple*,

731 F. App'x 11, 13 (2d Cir. 2018) (affirming dismissal of inmate's deprivation of property claim on the ground that the inmate had not asserted facts to show that the process provided by the State of Connecticut, including the opportunity to seek relief through the Office of the Claims Commissioner, was inadequate to compensate him for the deprivation of his property items); *Edwards v. Erfe*, 588 F. App'x 79, 80-81 (2d Cir. 2015) (same).

Accordingly, the plaintiff has not stated a plausible claim of a deprivation of property under the Fourteenth Amendment. The Fourteenth Amendment due process claim seeking money damages and injunctive relief related to the alleged loss or confiscation of unidentified items of the plaintiff's property is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C. **Fourteenth Amendment Due Process – Procedural Due Process Transfer to or Placement on Security Risk Group Status**

The plaintiff alleges that in July 2018, the defendants improperly removed him from special management needs status and placed him in the security risk group program based on his 2009 designation as a security risk group member. The plaintiff does not allege that he participated in a hearing prior to his placement in the security risk group program at Walker. He contends that there was no basis for his placement in the security risk group program because he had been disciplinary report free and had not engaged in any security risk group member activity for a significant period of time prior to July 2018. The court construes these allegations as a claim that the defendants did not provide the plaintiff with procedural due process prior to placing him in the security risk group program in July 2018.

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV. "Liberty interests protected by the Fourteenth Amendment may arise from two sources -- the Due Process Clause itself and the laws

9

of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483-84. A plaintiff has a protected liberty interest only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields,* 280 F.3d 69, 80-81 (2d Cir. 2000).

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court applied the *Sandin* analysis to a due process claim asserted by inmates who had been classified for placement in a high security state prison for safety and security, rather than disciplinary reasons. *See id.* at 223 ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 at 484.). The Court concluded that the restrictive nature of the conditions in the high security facility coupled with the fact that the inmates' confinement under those conditions was indefinite and disqualified the inmates' from parole consideration "impose[d] an atypical and significant hardship" on the inmates and gave "rise to a liberty interest in their avoidance." *Id.* at 223-24.

10

The plaintiff alleges that he remained in the security risk group program from July 31, 2018 until October 4, 2018 and from October 17, 2018 to December 5, 2018, when he signed the complaint. See Compl., ECF No. 1, at 13-14 ¶¶ 68-69, 73 & at 18. The court concludes that the allegations regarding the restrictive conditions under which the plaintiff has been confined in the security risk program at Walker for almost four months subjected him to an atypical and significant hardship. See *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (holding that "in determining whether [an inmate] endured an atypical and significant hardship" a district court should consider the duration of the inmate's confinement in segregation and "the extent to which the conditions [in] . . . segregation differ from other routine . . . conditions" in general population.") (internal quotation marks and citation omitted). Accordingly, the plaintiff has asserted that he experienced conditions that were sufficiently atypical or significant as compared to the basic conditions of prison life to give rise to a liberty interest in their avoidance.

In *Hewitt*, the Supreme Court held that prior to placing an inmate in administrative confinement, an inmate "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." 459 U.S. at 476. As long as these two requirements are met, the non-adversary proceeding is held "within a reasonable time following the inmate's transfer" to administrative segregation, "and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied." *Id.* & n.8.

There are no allegations that the defendants provided the plaintiff with notice or a hearing prior to his placement in the security risk group program on July 31, 2018. Rather, the plaintiff

11

contends that he was placed in the program simply because he had been designated as a security risk group member in 2009. The plaintiff has alleged that Commissioners Semple and Cook, Deputy Commissioner Rinaldi, Director Santiago, Administrators Maldenado, Quiros, Rodriguez, Mulligan, and David Maiga, Correctional Employees Tugie, Aldi, Molden, and Kocienda failed to provide him with the procedural due process protections required by *Hewitt* prior to his placement in the security risk group program. This Fourteenth Amendment due process claim will proceed against Commissioners Semple and Cook, Deputy Commissioner Rinaldi, Director Santiago, Administrators Maldenado, Quiros, Rodriguez, Mulligan, and David Maiga, Correctional Employees Tugie, Aldi, Molden, and Kocienda in their individual and official capacities.

### D. **Fourteenth Amendment Due Process – Periodic Reviews**

The plaintiff has alleged that during the eight years that he remained on special needs management status, Commissioners Semple and Cook, Deputy Commissioner Rinaldi, Director Santiago, Administrators Maldenado, Quiros, Rodriguez, Mulligan, and David Maiga, Correctional Employees Tugie, Aldi, Molden, Burns, Papoosha, Kocienda and Frayne failed to prepare an individualized management plan with regard to his treatment needs and goals to be met for removal from that status and failed to engage in periodic reviews to determine whether his continued confinement on that status was necessary. The plaintiff alleges that the same defendants failed to engage in periodic reviews during the nine years that he was classified to security risk group member status to determine whether his continued confinement on that status was warranted.

In *Hewitt*, the Supreme Court held that "prison officials must engage in some sort of

periodic review of the confinement of [an] . . . inmate[s]" placed on administrative segregation or detention to ascertain "whether [the inmate] remains a security risk." 459 U.S. at 477 n.9. These reviews are necessary to ensure that prison officials are not using "administrative segregation . . . as a pretext for indefinite confinement of an inmate." *Id.* The Second Circuit has observed that periodic reviews of an inmate's placement in administrative segregation are "flexible and may be based on 'a wide range of administrative considerations,' including but not limited to observations of the inmate in Ad[ministrative] Seg, 'general knowledge of prison conditions,' misconduct charges, ongoing tensions in the prison, and any ongoing investigations." *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) (quoting *Hewitt*, 459 U.S. at 477 n.9).

The court concludes that the plaintiff has stated plausible Fourteenth Amendment procedural due process claims relating to his long-term confinement on special management needs status and security risk group member status without meaningful, periodic reviews. These claims will proceed against Commissioners Semple and Cook, Deputy Commissioner Rinaldi, Director Santiago, Administrators Maldenado, Quiros, Rodriguez, Mulligan, and David Maiga, Correctional Employees Tugie, Aldi, Molden, Burns, Papoosha, Kocienda, and Frayne in their individual and official capacities.

## ORDERS

The court enters the following orders:

(1) The Fifth Amendment claim and Fourteenth Amendment property claim are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Fourteenth Amendment due process claims relating to the plaintiff's long-term confinement on special management needs status and security risk group status without meaningful, periodic reviews **WILL PROCEED** against

Commissioners Scott Semple and Rollin Cook, Deputy Commissioner Monica Rinaldi, Security Director Antonio Santiago, Administrators Edward Maldonado, Angel Quiros, Nick Rodriguez, William Mulligan, and David Maiga, Correctional Employees Elizabeth Tugie, Jon Aldi, Derrick Molden, Craig Burns, Daniel Papoosha, Thomas Kocienda, and Mark Frayne in their individual and official capacities. The Fourteenth Amendment procedural due process claim relating to the plaintiff's placement in the security risk group program at the end of July 2018 **WILL PROCEED** against Commissioners Scott Semple and Rollin Cook, Deputy Commissioner Monica Rinaldi, Director Antonio Santiago, Administrators Edward Maldonado, Angel Quiros, Nick Rodriguez, Michael Mulligan, and David Maiga, Correctional Employees Elizabeth Tugie, Jon Aldi, Derrick Molden, and Thomas Kocienda in their individual and official capacities.

**(2)** **Within twenty-one (21) days** of this Order, the Clerk shall verify the current work addresses of: Commissioner Scott Semple, Commissioner Rollin Cook, Correctional Employee Jon Aldi, Correctional Employee Daniel Papoosha, Correctional Employee Craig Burns and Correctional Employee Mark Frayne and mail a copy of the Amended Complaint, [ECF No. 27], this Order, and a waiver of service of process request packet to each of these defendants in his or her individual capacity at his or her confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendants shall file their response to the amended complaint, either an answer or motion to dismiss, **within thirty (30) days** of the date of this order. If the defendants choose to

14

file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

**(4)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

**(5)** All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

**(6)** The Clerk shall send a courtesy copy of the Amended Complaint, [ECF No. 27], and this Order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

SO ORDERED at Hartford, Connecticut this _27_ day of _June_, 2019.

                                         _/s/ MICHAEL P. SHEA_
                                         Michael P. Shea
                                         United States District Judge